1

2

3

4

5                      UNITED STATES DISTRICT COURT

6                      EASTERN DISTRICT OF CALIFORNIA

7

8    SIERRA FOREST LEGACY, et al.,          No. 2:05-cv-00205-MCE-GGH

9              Plaintiffs,

10        v.                                **MEMORANDUM AND ORDER**

11   MARK REY, in his official
     capacity as Under Secretary of
12   Agriculture, et al.,

13             Defendants.
     _____/
14
     PEOPLE OF THE STATE OF                  No. 2:05-cv-00211-MCE-GGH
15   CALIFORNIA, ex rel.
     EDMUND G. BROWN JR.,
16   Attorney General,

17             Plaintiff,

18        v.

19   UNITED STATES DEPARTMENT OF
     AGRICULTURE, et al.,
20
               Defendants.
21
          and
22
     TUOLUMNE COUNTY ALLIANCE FOR
23   RESOURCES & ENVIRONMENT, et al.;
     CALIFORNIA SKI INDUSTRY ASS'N;
24   QUINCY LIBRARY GROUP, et al.;
     and CALIFORNIA CATTLEMEN'S ASS'N,
25
               Defendant-Intervenors.
26

27                      ----oo0oo----

28

                                1

1    In ruling on summary judgment motions filed in both of these
2  cases in August and September of 2008, this Court found for
3  liability purposes that the 2004 Framework complied with the
4  provisions of the National Environmental Policy Act (NEPA) and
5  the National Forest Management Act (NFMA), except to the extent
6  that the 2004 Framework was implemented without sufficient review
7  of alternatives other than the chosen option.  Our determination
8  in that regard was guided by the Ninth Circuit's decision in
9  Sierra Nevada Forest Protection Campaign v. Rey, 526 F.3d 1228,
10  1231 (9th Cir. 2008).  In that decision, the Ninth Circuit
11  reversed this Court's denial of a preliminary injunction in this
12  matter on narrow grounds, finding the Plaintiffs were likely to
13  succeed on the claim that the Forest Service failed to consider
14  all reasonable alternatives in the 2004 SEIS.[1]  In particular,
15  the Ninth Circuit found that the SEIS for the 2004 Framework
16  could not rely on alternatives modeled in the 2001 Framework EIS
17  because of modeling changes between the two documents.  The Ninth
18  Circuit further faulted the Forest Service for failing to
19  consider alternative methods of funding fire reduction work.
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26
27    [1] While the panel decision in Rey was later superseded by an
additional opinion on August 13, 2009 (Sierra Forest Legacy v.
28  Rey, 577 F.3d 1015 (9th Cir. 2009) that amended opinion still
found that same alternatives violation.

2

1    On the basis of this alternatives defect, both Plaintiff

2 Sierra Forest Legacy ("Legacy") and Plaintiff People of the State

3 of California ex rel. Edmund G. Brown, Jr., Attorney General

4 ("California") now argue for extraordinarily broad relief in the

5 remedies phase of the case.[2]  Plaintiffs demand that we

6 substantively enjoin implementation of the entire 2004 Framework

7 in any of the eleven forests subject to the Framework, and

8 request that the 2001 Framework be reinstated.  Plaintiffs

9 request a permanent injunction to that effect.

10

11                          **STANDARD**

12

13    To obtain permanent injunctive relief, a plaintiff must

14 show: 1) that it has suffered an irreparable injury; 2) that

15 remedies available at law, such as monetary damages, are

16 inadequate to compensate for that injury; 3) that, considering

17 the balance of hardships between the plaintiff and defendant, a

18 remedy in equity is warranted; and 4) that the public interest

19 would not be disserved by a permanent injunction.  Northern

20 Cheyenne Tribe v. Norton, 503 F.3d 836, 843 (9th Cir. 2007)

21 (quoting eBay Inc. v. MercExchange, 547 U.S. 388, 391 (2006)).

22 ///

23 ///

24 ///

25 ///

26

27    [2] At the parties' request, we deferred addressing the
28 remedies aspect of this matter pending additional briefing after
   questions of liability had been decided.

1   This traditional analysis for assessing injunctive relief is
2   not altered by the fact the Plaintiffs have alleged an
3   environmental injury. The Lands Council v. McNair, 537 F.3d 981,
4   1005 (9th Cir. 2008) (en banc) ("our law does not... allow us to
5   abandon a balance of harms analysis just because a potential
6   environmental injury is at issue.") See also Sierra Club v.
7   Penfold, 857 F.2d 1307, 1318 (9th Cir. 1988 ("in the context of
8   environmental injury, irreparable damage is not presumed in
9   evaluating agency action.").

10   To obtain permanent injunctive relief in this, like any
11   other case, Plaintiffs bear the burden of proving a substantial
12   immediate irreparable injury by a preponderance of the evidence.
13   Orantes-Hernandez v. Thornburgh, 919 F.2d 549, 558 (9th Cir.
14   1990). Plaintiffs must establish a likelihood, rather than a
15   mere possibility, of substantial and immediate injury. Winter v.
16   Natural Resources Def. Council, Inc., 129 S. Ct. 365, 375-76
17   (2008).

18   In determining the propriety of injunctive relief, it must
19   also be remembered that an injunction is an "extraordinary
20   remedy" which does not issue "as of course" or for "trifling"
21   injuries. Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-12
22   (1982). Moreover, the Ninth Circuit admonishes that a
23   injunction, if issued, "must be narrowly tailored to give only
24   the relief to which plaintiffs are entitled." Orantes-Hernandez
25   v. Thornburgh, 919 F.2d at 558; see also Clark v. Coye, 60 F.3d
26   600, 604 (9th Cir. 1995). Narrow, curative remedies that do not
27   prohibit the agency from acting are favored. See Elings v.
28   C.I.R., 324 F.3d 1110, 1113 n. 14 (9th Cir. 2003).

1    The district court has broad discretion in weighing the

2    equitable factors germane to deciding whether injunctive relief

3    is, or is not, indicated.  The Lands Council v. McNair, 537 F.3d

4    at 1003-05 (9th Cir. 2008) (en banc).  Relief should consequently

5    be narrowly tailored to remedy the legal violation found and to

6    balance the hardships between the parties.

7

8                              **ANALYSIS**

9    **A.    This Court Lacks Jurisdiction To Issue A Substantive
           Injunction For A Procedural NEPA Violations Found To**

10         **Exist In A Programmatic Document Like The 2004
           Framework.**

11

12   The 2004 Framework, as a programmatic document, does not

13   itself authorize any timber harvesting.   Project level proposals

14   for on-the-ground harvesting/treatment activities are separately

15   evaluated under NEPA on a project-by-project basis.

16   We have already noted in our summary judgment rulings that

17   substantive challenges to the 2004 Framework, in the abstract,

18   are not ripe for adjudication.  Instead, substantive relief is

19   limited to justiciable site-specific controversies.   On a

20   programmatic Framework basis, as we have also already concluded,

21   we are limited to providing procedural relief.  Although the

22   specific Basin, Slapjack and Empire projects targeted by Legacy

23   may implicate certain defects within the 2004 Framework, that

24   still does not render the *entire* Framework amenable to judicial

25   review and relief.  Instead, any substantive relief accorded by

26   the court is limited to the scope of site-specific projects.

27   ///

28   ///

5

1  Accordingly, this Court lacks jurisdiction over Plaintiffs'[3]

2  substantive claims against the programmatic 2004 Framework.  A

3  procedural shortcoming under an environmental statute does not

4  create any presumption in favor of a substantive injunction.

5  Northern Cheyenne Tribe v. Hodel, 851 F.2d 1152, 1158 (9th Cir.

6  1988).

7       Plaintiffs nonetheless argue that where an EIS like that

8  employed in developing the 2004 Framework is found to be legally

9  deficient, the appropriate remedy is to set aside the plan,

10 reinstate the pre-existing plan, and enjoin site-specific

11 activities that are inconsistent with the prior plan.  Plaintiffs

12 consequently ask for an injunction mandating implementation of

13 the 2001, rather than 2004 Framework, along with a blanket

14 prohibition of all projects promulgated under the auspices of the

15 2004 plan.  They cite Oregon Natural Desert Ass'n v. Bureau of

16 Land Mgt., 531 F.3d 1114 (9th Cir. 2008) in support of that

17 request, but nonetheless concede such a remedy is subject to the

18 traditional equitable balancing attendant to injunctive relief.

19 Significantly, in Citizens for Envtl. Quality v. United States,

20 731 F. Supp. 970 (D. Colo. 1985), like this case, the court found

21 deficiencies in the applicable forest plan, including a failure

22 to include an adequate range of alternatives.

23 ///

24 ///

25

26      [3] While Legacy does target the specific projects enumerated
   above, the State's challenge is entirely programmatic.  While the
27 State argues that the same principles apply to both its proposed
   programmatic injunction and the site-specific challenges made by
28 Legacy, that position is incorrect.

6

1  The <u>Citizens</u> court nonetheless declined to set aside the forest

2  plan as a whole and directed the agency to remedy the

3  deficiencies identified, while leaving the plan in place.  <u>Id</u>. at

4  997.  That decision is equally applicable here and supports a

5  finding that the Court should be permitted to craft a remedy it

6  considers appropriate under the facts of this case.  The APA

7  itself, under which NEPA challenges are heard, expressly gives

8  the courts discretion to act on any appropriate legal or

9  equitable ground in crafting a remedy.  5 U.S.C. § 701.

10       Given the discretion accorded to the court and the

11  relatively minor nature of the 2004 Framework's NEPA violation,[4]

12  any blanket injunction against implementation of the entire 2004

13  Framework (which regulates some 11.5 million acres of land

14  contained within eleven California national forests) is an

15  excessively-broad rather than a narrowly-tailored injunction.

16  Instead, the availability of site-specific NEPA review can

17  ameliorate any harm from ongoing projects while the agency

18  corrects a program level NEPA error.  <u>See</u> <u>Northern Cheyenne Tribe</u>

19  <u>v. Norton</u>, 503 F.3d at 844.  The specifics of a remedy along

20  those lines will be discussed below.

21  ///

22  ///

23  ─────────────

24       [4] Even the alternatives defects identified by the Ninth
    Circuit, and recognized by us on summary judgment, may well be
25  inconsequential.  According to the Declaration of Klaus Barber
    submitted by the Forest Service, any change in modeling
26  assumptions between 2001 and 2004 made no significant difference
    in the model outputs.  Barber Decl., ¶¶ 10, 11.  This militates
27  against any appreciable difference between the assumptions
    utilized in the 2001 and 2004 Frameworks after all, a conclusion
28  which would further minimize the import of the alternatives
    violation found by the Ninth Circuit.

1
2

**B.    Plaintiffs' Proposed Programmatic Remedy Also Fails Under Traditional Injunction Standards.**

3      In ruling on liability issues by way of summary judgment,
4  this Court already rejected the claimed shortcomings in the
5  Framework identified by Plaintiff, shortcomings that included
6  both unnecessary logging not required for fire control and forest
7  health, excessive grazing, and impacts on wildlife caused by such
8  activities.  Plaintiffs now, in an attempt to revisit those
9  issues, have now produced additional declarations from their
10  experts that they claim establish the irreparable harm and public
11  interest concerns necessary to sustain injunctive relief.
12  Plaintiffs' expert submission, in turn, spawned some fifteen
13  declarations submitted by the Forest Service and those Forest
14  Service declarations prompted Plaintiffs to file still more
15  declarations in rebuttal.

16      The Court's review of the new declarations submitted causes
17  it to conclude that Plaintiffs are again trying to discredit what
18  appear to be thorough, reasonable expert conclusions reached by
19  the Forest Service following considerable effort and analysis.
20  In such a "battle of the experts", the law provides that the
21  Forest Service is entitled to rely on the reasoned opinions of
22  its experts.  The Lands Council v. McNair, 537 F.3d at 993
23  (noting that courts should conduct a "particularly deferential
24  review" of an agency's predictive judgments about areas within
25  the agency's field of discretion and expertise, as long as they
26  are reasonable); Marsh v. Oregon Natural Res. Council, 490 U.S.
27  360, 377-85 (1989) (agencies' scientific opinion prevails in a
28  battle-of-experts situation).

1    The Forest Service has concluded, for example, that the risk
2    of stand-replacing wildfire is more significant to the survival
3    of species like the California spotted owl that the risk that
4    some habitat and preferred trees will be lost in attempting to
5    ameliorate the fire risk.  The Court should not second-guess the
6    Forest Service's reasoned determination that the 2004 Framework
7    accomplishes greater fuels reduction and better serves the public
8    interest in protecting human, animal and old growth tree
9    communities from stand replacing wildfires.  The same holds true
10   for the Forest Service's conclusion that the prescriptions
11   outlined by the 2004 Framework better address other forest health
12   issues like drought and insect damage.  Even California admits
13   that "we must take action to address the very real risk of
14   wildfire and beetle bark infestation," as discussed in the
15   declarations submitted on behalf of the Forest Service.
16   California's Reply Brief, p. 14.

17    With respect to the public interest, only the 2004
18   Framework would fully implement the QLG Pilot Project and allow
19   achievement of that experiment in forest management mandated by
20   Congress, which aims to both lower the risks of widespread
21   wildfires and to support local economies.  Moreover, the
22   public interest represented by other national forest statutes-
23   including the NFMA- supports achievement of a wide array of
24   multiple-use benefits under the 2004 Framework, instead of the
25   short-term tree preservation emphasized in the 2001 Framework.
26   ///
27   ///
28   ///

1    The balancing of the hardships required in assessing

2 injunctive relief does not appear to favor Plaintiffs' position,

3 either.  As opposed to wildlife and logging concerns already

4 largely discredited in the liability portion of this case (and not

5 revived by the competing expert declarations submitted on behalf

6 of all sides in briefing the remedies issue herein), the 2004

7 Framework offers better long-term forest health, increased

8 protection to species in the long run by improved forest management,

9 reduced fire risk to people and communities, and economic benefits

10 to stagnating forest industries in the form of increased treatment

11 facilities.  As the Forest Service correctly points out, such

12 activities not only create jobs but also sustain the infrastructure

13 needed to properly manage forest resources, infrastructure which

14 may be lost if treatment options are further constricted.

15    All these concerns must be weighed by the courts in

16 determining the availability of injunctive relief.  As the Ninth

17 Circuit recently explained in its 2008 en banc decision in The

18 Lands Council v. McNair, supra:

19      In balancing the harms, we must weigh the environmental
        injuries invoked by the Lands Council against the other
20      injuries identified by the Forest Service and
        Intervenors....Our law does not, however, allow us to
21      abandon a balance of harms analysis just because a
        potential environmental injury is at issue....Though
22      preserving environmental resources is certainly in the
        public's interest, the [timber harvesting] Project
23      benefits the public's interest in a variety of other
        ways.  According to the Forest Service, the Project
24      will decrease the risk of catastrophic fire, insect
        infestation, and disease, and further the public's
25      interest in aiding the struggling local economy and
        preventing job loss...The Court did not clearly err in
26      concluding that the balance of harms did not tip
        sharply in Land Council's favor.

27

28 The Lands Council v. McNair, 537 F.3d at 1004-05.

10

Moreover, it must also be remembered that the 2004 Framework has been in place some five years and has guided the management of the eleven national forests within the Sierra Nevada region during that entire period.  Plaintiffs urge both retroactive and prospective application of the 2001 Framework given the procedural defect identified within its 2004 successor.  That approach would waste countless resources already devoted to project assessment and disrupt continuing efforts to accomplish both badly-needed forest treatment and multiple-use forest objectives.

**C.  Remedy**

We have already demonstrated why a Plaintiffs' attempt to enjoin any project prepared under the auspices of the 2004 Framework must fail, whether for jurisdictional reasons or upon assessment of the traditional factors for granting injunctive relief.  We must now determine what relief is indicated given the NEPA alternatives defect contained within the 2004 Framework as it presently stands.

In its 2007 <u>Northern Cheyenne</u> decision, the district court, like this court, found certain procedural deficiencies but (also like this case) for the most part found that the EIS in question complied with NEPA.  The district court refused to return to the pre-amendment status quo, and instead allowed development to proceed while the agency remedied the deficiencies of the programmatic NEPA docuement.  <u>Northern Cheyenne</u>, 503 F.3d at 842, 844.

11

1  The Ninth Circuit affirmed, finding that the district court's
2  remedy "sufficiently took account of the potential harms to both
3  sides."  Id. at 844.

4      Additionally, in High Sierra Hikers Ass'n v. Blackwell, 390
5  F.3d 630, 638 (9th Cir. 2004), the Ninth Circuit also declined to
6  return to the status quo ante in the face of a procedural NEPA
7  violation, noting that the district court had "broad latitude" in
8  fashioning relief that provided interim relief for the
9  environment pending compliance with NEPA.

10      While Plaintiffs attempt to distinguish both Northern
11  Cheyenne and High Sierra Hikers on grounds that much of the
12  activities at issue were in fact ultimately precluded, the fact
13  remains that both cases allowed some level of continued
14  implementation for activities which the courts concluded did not
15  have adequate analysis under NEPA.  This is consistent with the
16  broad discretion accorded courts in fashioning equitable remedies
17  in the face of NEPA/APA violations.

18      In exercising that discretion, the Court orders the Forest
19  Service to prepare another supplemental EIS on the Framework, one
20  that meets the range of alternatives and analytical consistency
21  identified by the Ninth Circuit in its decision on the
22  preliminary injunction portion of this case.  That supplemental
23  EIS process is to be completed not later than May 1, 2010.
24  ///
25  ///
26  ///
27  ///
28  ///

12

1    While the Forest Service suggests a procedural remedy in the
2  guise of a requirement that it address the alternatives issue
3  within the revision process for each of the forest plans covered
4  by the 2004 Framework (these revisions are expected to occur
5  between 2009 and 2011), as Plaintiffs point out such forest
6  revisions do not require an EIS and the public input associated
7  within an EIS, and consequently are not an acceptable substitute
8  for an alternatives analysis that should have been done within
9  the EIS in the first place.

10    At a project level, where the Court can properly make
11  substantive recommendations, it orders the Forest Service to
12  include a detailed consideration of project alternatives,
13  including a non-commercial funding alternative, for all new fuel
14  reduction projects not already evaluated and approved as of the
15  date of this Memorandum and Order.  Plaintiffs attempt to
16  discredit this project-specific way of addressing the
17  alternatives deficiencies of the 2004 Framework by arguing that
18  site-specific plans must tier to, and be consistent with, the
19  programmatic management plan.  Inland Empire v. USFS, 88 F.3d
20  754, 757 (9th Cir. 1996).  Plaintiffs therefore claim that the
21  Forest Service cannot remedy its failure to consider forest plan
22  alternatives by considering alternatives at the site-specific
23  level.  Such a narrow view, however, does not comport with the
24  discretion accorded courts in fashioning an appropriate equitable
25  remedy to NEPA violations under the APA.
26  ///
27  ///
28  ///

13

**CONCLUSION**

In sum, the Court orders that the Forest Service address the NEPA violation previously identified in both these cases by a combination of 1) addressing the procedural Framework defect through a supplemental EIS process, to be completed not later than May 1, 2010; and 2) rectifying any on-site substantive deficiencies by requiring, for new fuel-reduction projects, an amplified alternatives analysis at the project level as delineated above.  Existing projects already evaluated and approved may continue while the Forest Service progresses through the supplemental EIS process.

Apart from the above-enumerated relief, however, the Court DENIES Plaintiff Legacy's Renewed Motion for Injunctive Relief (Docket No. 283) to the extent it seeks to set aside the 2004 Framework in its entirety and replace said Framework with its 2001 predecessor.  The Court further rejects the request, made by Plaintiff California in its remedy briefing, for the same injunctive relief.

///
///
///
///
///
///
///
///
///

14

1    In order to encourage the parties to come to a voluntary
2  agreement concerning these matters without additional judicial
3  intervention, the Court stays this Order, for a period of thirty
4  (30) days after the date it is electronically filed, in order to
5  facilitate such settlement discussions.  Once that thirty (30)-
6  day period expires, the directives of this Order shall take
7  effect without further notice.
8    IT IS SO ORDERED.
9
   Dated: November 3, 2009
10
11
12                        MORRISON C. ENGLAND, JR.
13                        UNITED STATES DISTRICT JUDGE

15